IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HAROLD and LOIS WHITE, husband and wife,<br><br>Plaintiffs,<br><br>vs.<br><br>HOWMEDICA, INC., a wholly owned subsidiary of Pfizer Drug Company,<br><br>Defendant. | CASE NO. 8:04CV156<br><br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on the Motion for Summary Judgment filed by Defendant Howmedica, Inc. ("Howmedica"). (Filing No. 25). For the reasons stated below, the motion will be granted.

The Complaint alleges that the artificial knee components implanted in Plaintiff Lois White were defectively manufactured and failed to function as designed and expected. (Filing No. 1, hereafter "Complaint" ¶ 2). As a result of this alleged manufacturing defect, Lois White allegedly suffered severe and painful permanent injuries and her husband, Harold White, suffered loss of companionship and impairment of marital relation. (*Id.*).

The Whites invoked the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. The Complaint alleges that the Whites are citizens of Nebraska; that Howmedica is a corporation formed and having its principal place of business outside Nebraska; and that the amount in controversy exceeds $75,000. (Complaint ¶¶ 1-2).

### Standard

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Philip v. Ford Motor*

*Co.*, 328 F.3d 1020, 1023 (8th Cir. 2003). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id.* at 324-25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249-50 (citations omitted).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327.

2

**Background**

The following facts are not in dispute.[1]  Lois White suffers from degenerative arthritis.  (Filing No. 26, hereafter "Support Brief" at 2, ¶ 1).  In 1990, she had a tibial osteotomy on her right knee at which time a portion of her tibial bone was removed. (Support Brief at 2, ¶¶ 1,2).  The pain in her knee continued, and six years later, Dr. Stephen Noel, orthopedic surgeon, performed a total knee revision.  (*Id.* ¶ 4).  Dr. Noel selected various artificial knee components from a variety of manufacturers, including Howmedica.  (*Id.* ¶ 5).

In 2001, Lois White began experiencing stiffness in her right knee.  (*Id.* ¶ 6).  Dr. Noel performed a total knee revision in 2002 to remove scar tissue, at which time he noticed that "the polyethylene of the patella was scived and had a little bit of delamination" and "[o]n the tibial side, there was a divot out of the medial side that almost looked as if there was a cavity."  (*Id.* at 3, ¶¶ 8,9).  The device was sent to the pathology department and analyzed by Dr. James T. Quesenberry; however, the pathology report failed to state any findings.  (*Id.* ¶ 10).  In 2003, Dr. Noel performed a second total knee arthroplasty on Lois White's left knee, selecting artificial knee components from another manufacturer that is not a party to this case.  (*Id.* ¶ 11).

The Whites filed a three-paragraph Complaint on April 1, 2004, alleging that Howmedica manufactured and sold a defectively manufactured product. (Filing No. 1).

---

[1] The Plaintiffs' responsive brief contains some facts in the introduction section, but the brief does not comply with NECivR 56.1(b) because it does not address each of the Defendant's numbered, factual allegations and, in the case of disagreement, point the Court to the specific materials on which the Plaintiffs rely.  When a responding party fails to comply with NECivR 56.1(b), the movant's allegations of fact may be deemed admitted.  Regardless, The Court has considered the Plaintiffs' facts in their brief in opposition to the motion for summary judgment.

The Final Progression Order called for the Whites to identify the expert(s) expected to testify at trial and to serve expert reports no later than July 15, 2005.  (Filing No. 19).  The Whites did not identify any experts or serve any expert reports.[2]  Howmedica moved for summary judgment, arguing that "in the absence of expert testimony establishing prima facie evidence of a defect, [the White's] action fails as a matter of law" and that the Whites failed to comply with the court-ordered expert disclosure deadline.  (Filing Nos. 25, 26).  The Whites oppose summary judgment, claiming that the defect falls within the "common knowledge" exception making expert testimony unnecessary, and, in the alternative only, that the affidavit of Dr. Noel qualifies as expert testimony and satisfies the Whites' burden of proof.  (Filing No. 40, hereafter "Opposition Brief" at 2; Noel Aff.).

## Discussion

### *"Common Knowledge" Exception*

Because this matter is before the Court based on diversity jurisdiction, the Court must apply the substantive law of the forum.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  For personal injury claims, Nebraska follows the Restatement (Second) of Conflict of Laws § 146 (1971).  *Malena v. Marriott Intern., Inc.*, 651 N.W.2d 850, 856 (Neb. 2002).  Section 146 states:

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

The implantation of the allegedly defective artificial knee components took place in Sioux

---

[2] Howmedica also indicates that Harold and Lois White have failed to respond to Howmedica's discovery requests.  (Support Brief at 4, ¶ 18).

City, Iowa. (Noel Aff. ¶ 2). However, the injury resulting from the alleged defect occurred over time rather than immediately upon implantation. No party contends that the law of any state other than Nebraska applies in this case, and no other state appears to have a more significant relationship to the occurrence or parties. The Court, therefore, finds that the place of injury is Nebraska, Lois White's state of residence, and that the substantive law of Nebraska governs.

Under Nebraska law, a manufacturing defect exists when a "product differs from the plan and specifications of the manufacturer." *Freeman v. Hoffman-La Roche, Inc.,* 618 N.W.2d 837, 841 (Neb. 2000). Plaintiffs have the burden of establishing by a preponderance of the evidence that a product was defective. *Uribe v. Sofamor, S.N.C.*, No. 8:95CV464, 1999 U.S. Dist. LEXIS 18854, at *14 (D. Neb. Aug. 16, 1999). In *Uribe,* the United States District Court for the District of Nebraska stated that expert testimony is ordinarily needed to establish a product defect in medical product liability cases. *Id.* at *23. Howmedica contends that Harold and Lois White are required to present expert testimony to support their manufacturing defect claim and to survive summary judgment. (Support Brief at 5).

The Whites contend that expert testimony is unnecessary to establish prima facie evidence of a defect, arguing that the alleged defect in the artificial knee components "is obvious and easily understood by a lay person. . . ." (Opposition Brief at 2-3). The Whites rely on *Durrett v. Baxter Chrysler-Plymouth, Inc.*, 253 N.W.2d 37, 39 (Neb. 1977), a case involving an alleged breach of warranty and defective steering wheel. In *Durrett,* the Nebraska Supreme Court said:

> The reliance on eyewitnesses alone is not fatal when a defect is obvious to a layman, but when standards of performance of the product are not generally known, other evidence, usually expert testimony, is necessary to prove proper or acceptable standards of performance. That evidence may be by evidence as to usages in the trade, the characteristics exhibited by similar goods manufactured by other sellers, or by government standards and regulations in the area.

*Durrett*, 253 N.W.2d at 39-40.

The product in this case is a prescription medical device, and such a device's intended or expected performance and what should or should not happen to the device six years after implantation is not common knowledge. The present matter is distinguishable from another case cited by Plaintiffs, *Boyd v. Chakraborty,* 550 N.W.2d 44 (Neb. 1996), where the Nebraska Supreme Court determined that expert testimony was not required to establish the standard of care when a fragment of a catheter tube was left in a patient's body following surgery. The court determined that a jury could understand, without the aid of an expert, that the fragment should have been removed. *Boyd,* 550 N.W.2d at 49. The presence of a defect in an artificial knee component, however, is not something that is so generally recognizable as to qualify under the so-called common knowledge exception or to eliminate the need for expert testimony. Therefore, expert testimony is required to defeat Howmedica's summary judgment motion.

### *Affidavit of Dr. Stephen Noel*

In the alternative only, the Whites claim that Dr. Noel, whose affidavit is attached to the Opposition Brief, qualifies as an expert and that his affidavit satisfies their burden of proof to establish prima facie evidence of a defect. (Opposition Brief at 7-8). Dr. Noel is Lois White's orthopedic physician and surgeon. (Noel Aff. ¶ 1).

The Final Progression Order (Filing No. 19, hereafter "Progression Order") called for the Whites to disclose their expert witnesses no later than July 15, 2005. The Order specifically stated that "a treating physician must be identified pursuant to Fed. R. Civ. P. 26(a)(2)(A)." (Progression Order at 2 n.1). The Whites disclosed Dr. Noel as witness with discoverable information in their Rule 26(a)(1) disclosures on February 16, 2005 (Filling No. 29, Ex. 1); but did not disclose Dr. Noel pursuant to Rule 26(a)(2)(A), as required. The Whites did not move for an extension of time to disclose experts and apparently did not respond to opposing counsel's request to provide the disclosure by August 5, 2005. (Support Brief at 4, ¶¶ 16,17). The Whites contend in their application to extend the time to respond to the summary judgment motion that they disclosed their expert witnesses pursuant to Rule 26(a)(1); however, that contention is a misstatement of the facts as well as the rule. Expert witnesses, including treating physicians, must be disclosed pursuant to Rule 26(a)(2), not 26(a)(1), and Dr. Noel was only disclosed as a witness with discoverable information, not as an expert. (Filing No. 29, Ex. 1).

The testimony in Dr. Noel's affidavit is governed by Fed. R. Evid. 702 rather than 701 because it is "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Dr. Noel stated that he "observed an unusual defect in the polyethylene on the tibial insert" which appeared "to be the result of an air bubble in the polyethylene during the manufacturing process." (Noel Aff. ¶ 6). He stated his opinion is based on his "familiarity with such prosthetic devices,. . . knowledge of the intended purpose,. . . and [his] observation of the existence and nature of the defects in the device [he] removed from Mrs. White's body." (*Id.* ¶ 7). Therefore, the Whites were required to disclose Dr. Noel as an expert pursuant to Fed. R. Civ. Pro. 26(a)(2).

7

Howmedica's summary judgment motion must be granted, because the alleged manufacturing defect in this case can only be established by expert testimony, and the Whites failed to disclose Dr. Noel, or any other witness, as an expert pursuant to Fed. R. Civ. Pro. 26(a)(2).

For the reasons stated in this memorandum,

IT IS ORDERED:

1. Defendant Howmedica's Summary Judgment Motion (Filing No. 25) is granted;

2. A separate Judgment will be entered.

DATED this 26th day of October, 2005.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge